IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LARRY F. WILSON, | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 05-437-SLR |
| NURSE RACHEL CARTWRIGHT, DR. SITTA ALIE, and DOCTOR ROBERTA BURNS, | ) |
| Defendants. | ) |

Larry F. Wilson, Lewes, Delaware. Pro se Plaintiff.

Andrea C. Rodgers, Esquire, and John A. Elzufon, Esquire, Elzufon, Austin, Readon, Tarlov & Modell P.A. Wilmington, Delaware.  Counsel for Defendant Cartwright.

**MEMORANDUM OPINION**

Dated: 6/9/08
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

On June 27, 2005, Larry F. Wilson, a pro se plaintiff proceeding in forma pauperis ("plaintiff"), filed the present action pursuant to 42 U.S.C. § 1983, alleging violation of his constitutional rights by First Correctional Medical ("FCM"), Rachel Cartwright R.N. ("Nurse Cartwright"), and Dr. Sitta Alie ("Dr. Alie").[1] Dr. Roberta Burns ("Dr. Burns") was added to the action on May 14, 2007. (D.I. 63) Nurse Cartwright, Dr. Alie, and Dr. Burns were all employed by FCM during the period in question. FCM was dismissed from the action on September 29, 2006. (D.I. 52, 53)

Plaintiff claims that defendants were deliberately indifferent to his medical needs.[2] He also asserts supplemental state claims under Delaware law for medical malpractice and negligence. In response, defendant Nurse Cartwright filed a motion to dismiss the complaint on the grounds that plaintiff: 1) failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e; 2) failed to state a civil rights claim showing "deliberate indifference;" and 3) failed to file an affidavit of merit as required for a medical malpractice claim pursuant to 18 Del.C. § 6853(a)(1).[3] (D.I. 75) The court has jurisdiction over the present suit pursuant to 28

---

[1] At the time of the incident in question, FCM contracted with the Delaware Department of Correction to provide medical care for inmates incarcerated at State of Delaware penal institutions, including Sussex Correctional Institution ("SCI"), where plaintiff was incarcerated.

[2] The court will only address whether defendant Nurse Cartwright was deliberately indifferent to plaintiff's medical needs, as Nurse Cartwright is the only party making the motion.

[3] "No healthcare negligence lawsuit shall be filed in this State unless the complaint is accompanied by... an affidavit of merit as to each defendant signed by an expert witness... and accompanied by a current curriculum vitae of the witness, stating

U.S.C. § 1331. For the reasons set forth below, the court grants defendant's motion to dismiss.

## II. BACKGROUND[4]

On June 11, 2005, plaintiff was an inmate at SCI in Georgetown, Delaware. At approximately 11:40 am, while playing basketball, he sustained an injury to his finger. Plaintiff notified Housing Officer Darby, who sent plaintiff to SCI's medical department for treatment. Upon his arrival, the nurse on duty, defendant Nurse Cartwright, attempted to splint his wounded finger with a "popsicle stick, tape, and gauze," despite the fact that it was "clearly ... broken and need[ed] emergency medical attention." (D.I. 2 at 1) Nurse Cartwright then called Dr. Alie and described the nature and extent of plaintiff's injury over the phone. Based on this description and without having any x-rays taken, Dr. Alie's diagnosis was that plaintiff had a dislocated finger. Plaintiff was given two pain pills and told to return in thirty minutes, at which point Nurse Cartwright was to attempt to put the finger back into place.

Plaintiff returned to the medical department, and observed Nurse Cartwright on the phone with Dr. Alie receiving directions on how to "pop" a finger back in place. (Id. at 1-2) Nurse Cartwright then tried these procedures on plaintiff in an attempt to remedy the dislocation. When the procedures were unsuccessful, Nurse Cartwright again consulted with Dr. Alie via telephone. Plaintiff was given another pain pill and told

---

that there are reasonable grounds to believe that there has been healthcare medical negligence committed by each defendant."

[4]The facts below are taken from the complaint (D.I. 2, 26) and accepted as true for purposes of this motion practice. See Trump Hotels &Casino resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).

2

to return again after an additional thirty minutes when they again would try to "pop" his finger back into place. Upon his subsequent return, plaintiff was told by Nurse Cartwright that "she was not going to touch [his] finger again and she was going to tell the doctor [that his] finger was not changing and in fact it was broke[n]." (Id.) Plaintiff was then transported to Beebe Hospital in Lewes, Delaware, for further treatment. X-rays were taken of plaintiff's hand which revealed a broken bone in his finger.

Plaintiff filed a medical grievance with the prison subsequent to the incident in question. Plaintiff alleges that he filed an initial grievance shortly following the injury and then filed a second grievance requesting to see an orthopaedic surgeon 2-3 weeks after the initial injury. (D.I. 43 at 2) Plaintiff was transferred to the Delaware Correctional Center in Smyrna, Delaware, and has continued to file grievances regarding his medical treatment.[5] (Id. at 2) As a result of the alleged inadequate medical care, plaintiff claims "damage and ongoing problems with his hand." (D.I. 14 at 1) Plaintiff also claims that the emergency room physician suggested that he see an orthopaedic surgeon for additional treatment; however, plaintiff has not been permitted to consult with said specialist. (Id. at 4) Plaintiff contends that he received inadequate medical treatment contrary to his federal constitutional rights and in violation of Delaware state law.

---

[5]Plaintiff provides grievances dated 8/26/05 and 10/26/05. In the grievance dated 8/26/05, plaintiff requests to be seen by a doctor and then by a specialist. (D.I. 43 at ex. A) In the grievance dated 10/26/05, under a description of the complaint, the following appears: "Inmate complaint: This is my third medical grievance [;] the first one I signed off on because I though[t] the problem was being solved." Again plaintiff requests to see a orthopaedic surgeon/specialist. (D.I. 43 at ex. A) A third grievance was not filed with the court.

3

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. See Erickson v. Pardus, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1959.

Plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. Phillips v. County of Allegheny, 515 F. 3d 224, 232 3d Cir. (2008). "[Without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. Id. (Citing Twombly, 127 S.Ct. at 1965 n.3). Therefore, "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Id. at 235 (quoting Twombly, 127 S.Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

4

enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234. Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint and its amendment, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, -U.S.-, 127 S.Ct. 2197, 2200 (2007) (citation omitted).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant contends that this action should be dismissed as to her because plaintiff failed to exhaust his administrative remedies prior to filing this action, as required under the PLRA, 42 U.S.C. § 1997e.[6] Exhaustion is mandatory, and prisoners must exhaust administrative remedies for any claim that arises within the prison, regardless of any limitations on the kind of relief available through the grievance process. Porter v. Nussle, 534 U.S. 516, 532 (2002). Prison conditions have been held to include the "environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." Booth v. Churner, 206 F.3d 289, 295 (3d Cir. 2000).

---

[6]The PLRA provides, in pertinent part:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).

Based on the complaint and the record before the court, it is clear that plaintiff did not exhaust his administrative remedies before filing suit. Plaintiff has provided the court with two grievances. The earliest of the two grievances, however, is dated August 26, 2005, nearly two months following plaintiff's filing of this action. Additionally, both grievances were filed with the prison by plaintiff in an attempt to receive additional medical care in the form of a follow up appointment with an orthopaedic surgeon/specialist. Neither grievance provided by plaintiff involve Nurse Cartwright or her medical treatment of plaintiff on the day in question. (D.I. 43 at ex. A) Plaintiff alleges he filed an initial grievance following his injury and that this grievance was "on the actions that took place by (two) of the defendants Nurse Cartwright and by Dr. Sitta Alie."[7] (D.I. 43 at 1) Assuming that plaintiff filed this initial grievance immediately following his injury, plaintiff did not allow reasonable time to receive a response, as he filed this suit a mere sixteen days after his injury. Plaintiff did not give the grievance process a chance prior to filling this action, therefore, plaintiff's complaint against Nurse Cartwright is dismissed for failure to exhaust his administrative remedies.[8] The court, nevertheless, will address the merits of defendant's additional grounds for dismissal.

---

[7] Plaintiff has not provided the court with this initial grievance and claims that his grievance was voided when he was transferred from SCI and that when FCM's contract with the Department of Corrections expired FCM retained all of the grievances against them leaving the Department of Corrections with no copies. (D.I. 78 at 2)

[8] Plaintiff also argues that his administrative remedies were exhausted because FCM's (employer of Nurse Cartwright) contract as the medical provider for the Delaware Department of Correction's system expired June 30, 2005. (D.I. 78 at 3) He argues that he can not "re-open old existing grievance" and that, because FCM is no longer the medical provider at the prison, he had no recourse. Id. However, this argument has no merit, as the grievance process is administered by the Department of Correction and is intended to redress problems, regardless of who the medical provider is.

**B. Deliberate Indifference**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Drumer, 991 F. 2d at 68 (citing Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987)). It has also found "deliberate indifference" to exist where the prison official persists in a particular course of treatment "in face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d at 109-11 (holding that allegations of several instances of flawed medical treatment state a claim under Eighth Amendment).

An official's conduct, however, does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know ... of and disregard ... an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511

7

U.S. 825, 837 (1994). Mere medical malpractice is insufficient to present a constitutional violation. Estelle v. Gamble, 429 U.S. at 106.

Viewing the facts and all reasonable inferences therefrom in a light most favorable to plaintiff, the court finds that plaintiff has not proffered sufficient factual allegations to establish that Nurse Cartwright was deliberately indifferent when treating his injury. Plaintiff asserts that Nurse Cartwright committed "deliberate indifference ... because she could plainly see through the plaintiff's deformed hand that he needed X-rays, cast, etc." and, in doing so, she "delayed medical treatment" and "prevented the plaintiff from receiving proper medical care." (D.I. 78 at 2) Even if a broken finger were to be considered a serious medical claim, plaintiff asked for and received treatment that same day within hours of his injury. The medical treatment given was consistent with the initial diagnosis. When on the first attempt that treatment was unsuccessful, plaintiff was transported to Beebe Hospital for x-rays and further medical care.[9] (D.I. 2) At no point did Nurse Cartwright refuse to provide medical treatment to plaintiff or attempt to prevent plaintiff from receiving medical treatment. Any possible delay in transporting plaintiff to Beebe Hospital occurred in the course of treating plaintiff based on the initial diagnosis and was not caused by a non-medical reason. Based on the record

---

[9]Plaintiff also alleges that Nurse Cartwright denied medical treatment because she "was not going to send plaintiff to Hospital or ask to send plaintiff until plaintiff refused to let Defendant touch his hand again." (D.I. 78 at 1) This assertion is contradicted by plaintiff's initial complaint where plaintiff states that upon his return to the medical unit after the unsuccessful attempt, "Nurse Rachel stated to me that she was not going to touch my finger again and she was going to tell the doctor [that] my finger was not changing and in fact it was broken." Following this, plaintiff was taken to the hospital. (D.I. 2 at 2)

presented, plaintiff's § 1983 claim against Nurse Cartwright does not rise to a constitutional level and, therefore, is dismissed.

### C. Medical Negligence

Nurse Cartwright moves to dismiss any medical negligence claims on the basis that plaintiff failed to accompany the complaint with an affidavit of merit. Delaware law requires that, at the time of filing the complaint, it be accompanied by an affidavit of merit to each defendant signed by an expert witness. 18 Del.C. § 6853. The statute provides for a single 60 day extension for the filing of the affidavit of merit, but only upon timely motion of the plaintiff and for good cause shown.

Plaintiff did not file an affidavit of merit with his complaint. Nor did he timely file a motion for an extension of time to file an affidavit of merit. Plaintiff's motion for extension was filed October 10, 2007, over two years from the filing of his complaint, and subsequent to defendant's motion to dismiss. Therefore, the court will grant Nurse Cartwright's motion to dismiss the medical malpractice and negligence claim.

### V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted. An appropriate order shall issue.